# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| LISA KEEL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **5:25-cv-480-EGL** |
| | ) |
| FRANK BISIGNANO, | ) |
| *Commissioner of* | ) |
| *Social Security*, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Lisa Keel seeks judicial review of the Commissioner of Social Security's denial of her applications for a period of disability, disability insurance benefits, and supplemental security income. Keel argues that substantial evidence does not support the Administrative Law Judge's (ALJ) decision, and that the ALJ failed to apply the proper legal standard for evaluating her subjective pain testimony. After careful review of the administrative record and the parties' briefs, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

### A. Procedural Background

Keel applied for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning on April 15, 2021. Doc. 6-7 at 2-16, 80. The agency denied her claims after an initial assessment, after

reconsideration, and on November 14, 2022, after a hearing before an ALJ. Doc. 6-3 at 34-45, 68-89.

On July 14, 2023, the Appeals Council granted review, vacated the hearing decision, and remanded the case for further proceedings. *Id.* at 90-96. On February 26, 2024, the ALJ again found Keel not disabled. *Id.* at 97-120. The Appeals Council vacated and remanded a second time on April 29, 2024. *Id.* at 121-126. Following that remand, the ALJ issued a decision on January 8, 2025, again concluding that Keel was not disabled. Doc. 6-2 at 13-29. On February 25, 2025, the Appeals Council denied review, rendering the ALJ's decision final. *Id.* at 2-7; *see also* 20 C.F.R. §§ 404.981, 416.1580, 422.210(a).

Keel exhausted her administrative remedies and timely filed this action. The Court therefore has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

## B. Factual Background

Keel alleges that her disability began on April 15, 2021, based on Crohn's Disease, chronic obstructive pulmonary disease (COPD), chronic pancreatitis, and degenerative disc disease. Doc. 6-2 at 19. She was fifty years old on that date, and she has a high school education and no relevant work history. *Id.* at 27.

## ALJ DECISION

To determine whether a claimant is disabled, an ALJ applies a five-step sequential evaluation process. In the following order, the ALJ considers whether the

claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals the severity of a listed impairment; (4) can perform any past relevant work; and, if not, (5) can adjust to other work that exists in significant numbers in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, the ALJ found at step one that Keel had not engaged in substantial gainful activity since April 15, 2021, her alleged disability onset date. Doc. 6-2 at 19. At step two, the ALJ determined that Keel had the following severe impairments: irritable bowel disease, Crohn's disease, chronic obstructive pulmonary disease, and degenerative disc disease of the lumbar spine. *Id.*

At step three, the ALJ concluded that none of Keel's impairments, alone or in combination, met or medically equaled a listed impairment. *Id.* at 21-22. The ALJ then assessed Keel's residual functional capacity (RFC) and found that she could perform a modified range of light work. *Id.* at 22. Specifically, Keel could frequently climb ramps and stairs but never climb ropes, ladders, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to non-weather-related extreme hot or cold and extreme vibration, such as from electric hand tools. *Id.* She also should avoid concentrated exposure to

3

pulmonary irritants and all exposure to unprotected heights and dangerous, moving, unguarded machinery, though she could operate a motor vehicle. *Id.*

At step four, the ALJ found that Keel had no past relevant work. *Id.* at 27. At Step 5, the ALJ relied on vocational-expert testimony to find that Keel could perform other jobs existing in significant numbers in the national economy, including small-products assembler, marker, and routing clerk. *Id.* at 27-28.

Based on these findings, the ALJ concluded that Keel was not disabled under the Social Security Act from April 15, 2021, through January 8, 2025. *Id.* at 28-29.

## STANDARD OF REVIEW

Judicial review under the Social Security Act is narrow. The Court asks only whether the Commissioner's decision is supported by substantial evidence and rests on the correct legal standards. *Winschel*, 631 F.3d at 1178.

"[W]hatever the meaning of 'substantial' in other contexts," in the context of judicial review of social security decisions, the threshold "is not high." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019). Substantial evidence exists where there is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). If that standard is met, the Court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted).

## DISCUSSION

Keel seeks reversal and remand, arguing that substantial evidence does not support the ALJ's RFC determination and that the ALJ failed to apply the proper legal standards for evaluating her subjective testimony of pain. Doc. 12 at 5-6.

Having carefully considered the record and briefing, the Court concludes that the ALJ's decision was supported by substantial evidence and based on an application of proper legal standards.

## I.    Pain Standard

When a claimant seeks to establish disability through her own testimony about pain or other subjective symptoms, the Eleventh Circuit's multi-step "pain standard" applies to review of her claim. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The claimant must show (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain resulting from the condition, or (3) that the objectively determined medical condition could reasonably be expected to produce the alleged symptoms. *Id.*; *see also Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024); 20 C.F.R. § 416.929.

Once that threshold is met, the ALJ must evaluate the claimant's statements about the intensity, persistence, and limiting effects of her symptoms and assess those statements against the objective medical evidence and the record as a whole. 20 C.F.R. § 416.929(c)(4); *see also Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d

1302, 1307 (11th Cir. 2018). In doing so, the ALJ must consider all relevant evidence, including the nature of the claimant's symptoms; precipitating and aggravating factors; daily activities; the type, dosage, and effects of medications; and the treatment or measures used to relieve symptoms. 20 C.F.R. § 416.929.

If the ALJ finds a claimant's subjective testimony not fully credible, the ALJ must articulate explicit and adequate reasons for that determination. *Wilson*, 284 F.3d at 1225; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A clearly articulated credibility finding supported by substantial evidence will not be disturbed on review. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The question is not whether the ALJ could have reasonably credited the claimant's testimony, but whether the ALJ was clearly wrong to discredit it. *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ applied the pain standard and found that although Keel had severe impairments that could reasonably be expected to cause her symptoms, her allegations of disabling intensity, persistence, and limiting effects were inconsistent with the objective medical evidence in the record as a whole. Doc. 6-2 at 23, 25.

The ALJ cited substantial evidence supporting that conclusion. Keel's colonoscopies repeatedly showed no signs of active Crohn's disease or inflammatory bowel disease. Doc. 6-2 at 25, 27; Doc. 6-10 at 47; Doc. 6-17 at 34. Treatment notes

typically documented a normal gait, normal strength, and intact sensation in all extremities. Doc. 6-2 at 25; Doc. 6-10 at 65-66; Doc. 6-12 at 4, 7, 10, 12, 17, 19, 35; Doc. 6-13 at 65; Doc. 6-14 at 2, 5, 8, 11; Doc. 6-17 at 49, 55, 60, 63, 68, 72. The ALJ also noted evidence that Keel's COPD symptoms were generally well controlled, despite occasional exacerbations. Doc. 6-2 at 27; Doc. 6-12 at 4, 7, 10, 12, 17, 19, 35; Doc. 6-14 at 2, 5, 8, 11; Doc. 6-15 at 2, 6, 12, 16, 20; Doc. 6-16 at 4, 7, 10, 14, 20; Doc. 6-17 at 7, 49, 55, 60, 63, 67, 72.

The ALJ further identified specific inconsistencies between Keel's testimony and the record. Although Keel reported needing up to twenty bathroom breaks per day due to IBS symptoms, her own logs reflected only five to six breaks during an eight-hour period. Doc. 6-2 at 25; Doc. 6-8 at 87-91; Doc. 6-9 at 17-20. Although she reported frequent shortness of breath, examinations routinely documented normal breath sounds and no increased work of breathing. Doc. 6-2 at 25; Doc. 6-10 at 36, 42, 78; Doc. 6-11 at 21, 33, 41, 46; Doc. 6-17 at 23, 29; Doc. 6-18 at 16, 19. And although Keel alleged that she could sit, stand, or walk for no more than thirty minutes at a time and could lift no more than a half-gallon of milk, the medical evidence repeatedly showed normal gait, normal strength, and intact sensation. Doc. 6-2 at 25, 51-52; Doc. 6-10 at 65-66; Doc. 6-11 at 46; Doc. 6-13 at 65; Doc. 6-18 at 11-13.

Keel contends that the ALJ failed to consider records from Birmingham Gastroenterology and improperly discounted her repeated complaints of diarrhea and abdominal pain. Doc. 12 at 9, 11. She argues that those records corroborate her allegations that she requires frequent restroom breaks throughout the workday. *Id.* She further maintains that the record clearly supports her claims of debilitating back pain and related limitations, including sciatica and lower-back pain. *Id.* at 12. On that basis, Keel argues that no reasonable person could conclude that she retains the ability to perform a full range of light work. *Id.* at 13 (citing *Crawford*, 363 F.3d at 1158).

Those arguments fail. As an initial matter, the premise is incorrect. The ALJ expressly considered Keel's allegations regarding the frequency and severity of her gastrointestinal symptoms, including her need for restroom breaks, and specifically discussed her treatment at Birmingham Gastroenterology. *See* Doc. 6-2 at 23-25. The ALJ was not required to provide a sentence-by-sentence exegesis of every treatment note. *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) ("[T]he ALJ is not required to specifically address every aspect of an opinion or every piece of evidence in the record."). It is enough that the substance of the evidence was considered and addressed, which it was.

Keel appears to argue that the persistence of her complaints over time should itself establish their credibility. *See, e.g.*, Doc. 12 at 11 (arguing that the ALJ "could

have only reached her determination by failing to properly consider the record in its entirety" but pointing only to the consistency of already considered evidence). But weighing the consistency of subjective allegations against the objective record is the ALJ's task, not the Court's. The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

The same is true for Keel's allegations of disabling back and sciatic pain. The ALJ addressed those complaints and reasonably found them unpersuasive in light of contrary objective findings documented throughout the record. Doc. 6-2 at 25, 27. Because the ALJ considered Keel's subjective statements in light of all the relevant evidence, articulated specific reasons for discounting Keel's allegations, and grounded those reasons in substantial evidence, Keel has shown no error warranting reversal.

## II.    RFC Determination

Keel also contends that the ALJ's RFC determination lacks substantial evidentiary support. That argument fails.

An RFC determination reflects the most a claimant can perform in a work setting despite her impairments. 20 C.F.R. §§ 404.1545, 416.945(a). It is based on the entire record, including medical history, laboratory findings, the effects of treatment, daily activities, and medical opinions. *Id.*; SSR 96-8p, 1996 WL 374184,

at *5 (S.S.A. 1996). The RFC determination is reserved to the Commissioner and, at the hearing level, to the ALJ. *See* 20 C.F.R. §§ 404.1526(c), 416.926(c); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). While the ALJ need not discuss every piece of evidence, she must consider the record as a whole and articulate the weight given to probative evidence. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). An RFC determination that satisfies these requirements and is supported by substantial evidence must be affirmed. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

The ALJ met that standard here. After reviewing the entire record, the ALJ found that Keel could perform a modified range of light work. Doc. 6-2 at 22. Specifically, the ALJ determined that Keel could frequently climb ramps and stairs but never climb ropes, ladders, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to non-weather-related extreme hot or cold and extreme vibration, such as from electric hand tools. *Id.* She also should avoid concentrated exposure to pulmonary irritants and all exposure to unprotected heights and dangerous, moving, unguarded machinery, though she could operate a motor vehicle. *Id.*

In reaching that conclusion, the ALJ conducted a comprehensive review of Keel's medical record. The ALJ explained that Keel began treatment with David

Landy, M.D., of Cullman Gastroenterology in 2014 for colitis, diarrhea, and abdominal pain. *Id.* at 23; Doc. 6-11 at 45. On April 15, 2021, around the alleged onset date, Dr. Landy documented normal bowel sounds, no abdominal distention or tenderness, normal lung sounds, and normal respiratory effort. Doc. 6-2 at 23; Doc. 6-10 at 42. A colonoscopy performed on April 29, 2021, showed internal hemorrhoids but no evidence of active Crohn's disease. Doc. 6-2 at 23; Doc. 6-10 at 47.

In June 2021, Dr. Landy again noted a normal physical examination, while noting the possibility of a symptom flare. Doc. 6-2 at 23; Doc. 6-10 at 36-37. By September 23, 2021, Keel reported persistent abdominal pain, but laboratory testing was largely normal, including a negative H. Pylori test. Doc. 6-2 at 23; Doc. 6-10 at 73-76. An October 18, 2021 CT scan revealed diverticulosis of the descending and sigmoid colon. Doc. 6-2 at 23; Doc. 6-10 at 83. When Keel reported frequent, urgent bowel movements on November 4, 2021, her examination remained largely unchanged apart from mild epigastric tenderness. Doc. 6-2 at 23; Doc. 6-10 at 77-79. An esophagogastroduodenoscopy (EGD) later showed only mild gastritis. Doc. 6-2 at 23; Doc. 6-10 at 35, 41, 73, 77, 82, 85.

On March 21, 2023, Keel's colonoscopy was again described as normal, except for nonactive diverticula. Doc. 6-2 at 24; Doc. 6-16 at 4. When she reported upper respiratory symptoms on April 18, 2023, she was prescribed a steroid and an

antibiotic, although the treatment note documented no respiratory abnormality. Doc. 6-2 at 24; Doc. 6-15 at 20-21. Though Keel later reported left-leg symptoms, including sciatic pain, her physical examinations remained largely normal. Doc. 6-2 at 24; Doc. 6-17 at 60, 68.

Keel underwent infusions and a temporary course of Flagyl but reported that the infusions were ineffective. Doc. 6-2 at 23-24, Doc. 6-13 at 59-61; Doc. 6-17 at 20, 25. Even so, treatment notes from September 7, 2023, documented only mild, generalized abdominal tenderness, with normal bowel sounds and no abdominal distention. Doc. 6-2 at 24; Doc. 6-17 at 23. A subsequent colonoscopy in October 2023 showed only mild diverticulosis of the sigmoid colon and no evidence of active Crohn's disease. Doc. 6-2 at 24; Doc. 6-17 at 34.

The ALJ also addressed the consultative examination performed by Jason Patterson, N.P, which further supported the RFC determination. Doc. 6-2 at 25; Doc. 6-10 at 63-68. Keel presented with complaints of Crohn's disease, COPD, and degenerative disc disease. Doc. 6-2 at 25; Doc. 6-10 at 63. On examination, her lungs were clear and bowel sounds were normal. Doc. 6-2 at 25; Doc. 6-10 at 64-65. A musculoskeletal examination showed a normal gait and full strength, sensation, and range of motion in the spine and all extremities. Doc. 6-2 at 25; Doc. 6-10 at 65-66. Grip strength was normal, and Keel could manipulate objects without difficulty. Doc. 6-2 at 25; Doc. 6-10 at 65. She had no difficulty getting on and off the

examination table, walking on her heels or toes, or squatting. Doc. 6-2 at 25; Doc. 6-10 at 65-66. Notably, the examination was not interrupted by a bathroom break, despite Keel's report of ten to fifteen bowel movements per day. Doc. 6-2 at 25; Doc. 6-10 at 68.

The ALJ also considered later evidence concerning Keel's musculoskeletal complaints. On August 12, 2024, Keel reported neck and back pain. Examination revealed an antalgic gait favoring the left leg, tenderness, and reduced cervical range of motion. Doc. 6-2 at 25; Doc. 6-18 at 39. She also reported altered sensation extending to into her feet but retained functional strength in her lower extremities. *Id.* An EMG/NCS study in September 2024 showed irritation of the left L5 nerve root. Doc 6-2 at 25; Doc. 6-18 at 33-34. A lumbar MRI revealed disc bulging and mild facet arthrosis at L4-L5, producing only mild neuroforaminal narrowing. Doc. 6-2 at 25; Doc. 6-18 at 26. Keel was treated with lumbar steroid injections and prescribed oxycodone. Doc. 6-2 at 25; Doc. 6-18 at 26, 28-29.

The ALJ also addressed Keel's respiratory complaints. On October 17, 2022, Keel presented with shortness of breath, but her lungs were clear, her oxygen saturation was 95 percent, and she was assessed with a COPD exacerbation. Doc. 6-2 at 24; Doc. 6-13 at 68. By November 22, 2022, her respiratory status had improved, and she reported being able to walk around Wal-Mart without difficulty. Doc. 6-2 at 24; Doc. 6-16 at 20.

The ALJ likewise considered Keel's non-severe mental impairments, explaining that Keel complained of anxiety and depression, the record consistently revealed that she exhibited appropriate mood and affect, intact memory, good concentration, and normal insight and judgment. Doc. 6-2 at 26-27; Doc. 6-10 at 42, 57-58; Doc. 6-12 at 4, 7, 10, 12, 17, 19, 35; Doc. 6-14 at 2, 5, 8, 11; Doc. 6-15 at 2, 6, 16, 20; Doc. 6-16 at 4, 7, 10, 14, 20; Doc. 6-17 at 7, 49, 55, 60, 63, 72.

The ALJ also discussed Keel's September 13, 2021, psychological consultative examination which revealed that she was appropriately dressed and groomed, and her speech was normal, though she displayed intense eye contact with an unnatural locking gaze. Doc. 6-2 at 26; Doc. 6-10 at 57. Keel exhibited normal cognition, thought content, memory, concentration, fund of information, judgment, and insight. Doc. 6-2 at 26; Doc. 6-10 at 57-58.

The ALJ also considered the opinions of the state-agency physicians, who concluded that Keel could meet the physical demands of medium-intensity work. Doc. 6-2 at 26; Doc. 6-3 at 30-31, 42-43, 52-54, 63-65. Although those opinions were supported by their narrative discussion of the medical evidence, the ALJ found Keel more limited and restricted her to light work. Doc. 6-2 at 22, 26.

The ALJ ultimately based its RFC determination on substantial, objective medical evidence. That evidence included repeated colonoscopies showing no signs of severe inflammatory bowel disease or active Crohn's disease, *see* Doc. 6-2 at 27;

14

Doc. 6-10 at 47; Doc. 6-17 at 34; treatment notes documenting normal gait, strength, and sensation in all extremities, *see* Doc. 6-2 at 27; Doc. 6-10 at 65-66; Doc. 6-12 at 4, 7, 10, 12, 17, 19, 35; Doc. 6-13 at 65; Doc. 6-14 at 2, 5, 8, 11; Doc. 6-17 at 49, 55, 60, 63, 68, 72; and evidence that Keel's COPD symptoms were generally well controlled despite some occasional exacerbation, *see* Doc. 6-2 at 27; Doc. 6-12 at 4, 7, 10, 12, 17, 19, 35; Doc. 6-14 at 2, 5, 8, 11; Doc. 6-15 at 2, 6, 13, 16, 20; Doc. 6-16 at 4, 7, 11, 14-15, 20; Doc. 6-17 at 7, 50, 55, 60, 63, 67, 72.

This record amply supports the ALJ's RFC determination. Even if the evidence could support a reduced RFC, that is immaterial. Where, as here, substantial evidence supports the ALJ's assessment, the Court must affirm the Commissioner's decision. *Moore*, 405 F.3d at 1213; *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

## CONCLUSION

Substantial evidence supports the ALJ's denial of Keel's application for disability benefits, and the proper legal standard was applied. The Court therefore **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** this 20th day of January, 2026.

_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE